OPINION
The plaintiff-appellant, Bessie S. Mayse ("the appellant"), appeals from a judgment of the Union County Court of Common Pleas entered on a jury verdict finding that she was not entitled to participate in Ohio's workers' compensation fund. For the following reasons, we affirm the judgment of the trial court.
The procedural history and facts of the case are as follows. The appellant was employed as a security guard with Acrux Investigative Agency ("Acrux"), a provider of security services. The appellant had been assigned by Acrux to provide security services to the Honda of America plant, located in Marysville, Ohio. The appellant's core duties at the plant consisted of escorting visitors, performing safety checks, and ensuring that the doors of the facility were locked and secured.
During the afternoon shift on November 13, 1995, the appellant was performing a routine "walk-around" when she was asked by fellow security officer and receptionist, Ruth Ann Wilson, who was located at the front desk, to prepare a bag of popcorn. The appellant obliged. According to the appellant, while attempting to prepare the bag of popcorn she received an intense electrical shock. The appellant was eventually taken to the hospital emergency room for treatment.
In April 1995, the appellant filed a workers' compensation claim with the defendant-appellee, Bureau of Workers' Compensation, for injuries she allegedly sustained as a result of the accident.[1] At the conclusion of the administrative proceedings, the Bureau denied her claim for participation in the workers' compensation fund. The appellant subsequently filed a notice of appeal and complaint in the Union County Court of Common Pleas. However, on April 18, 1997, the appellant voluntarily dismissed her claim pursuant to Civ.R. 41(A).
On April 9, 1998, the appellant filed a new complaint in the Union County Court of Common Pleas. The matter proceeded to a jury trial on April 12, 1999. At the conclusion of the appellant's case-in-chief, the Bureau requested a motion for a directed verdict pursuant to Civ.R. 50(A). The trial judge granted the Bureau's motion. On appeal, this Court reversed the decision of the trial court. See Mayse v. Conrad
(Oct. 8, 1999), Union App. No. 14-99-18, unreported. The trial judge in the original matter recused himself from further proceedings. The case was thereafter referred to a visiting judge for trial.
A new jury trial ensued during which both parties presented evidence, including testimony from lay and expert witnesses. At the conclusion of the evidence and following deliberations, the jury returned a verdict in favor of the Bureau of Workers' Compensation. The trial court subsequently entered judgment on the verdict in the Bureau's favor. Consequently, the appellant filed a separate motion for a judgment notwithstanding the verdict, which the trial court subsequently overruled. The trial court also had previously denied the appellant's motion for a directed verdict which was made during the course of the trial.
The appellant now appeals, asserting three assignments of error for our review. For purposes of clarity, we will address the appellant's second assignment of error first.
 Assignment of Error No. II The jury's verdict is against the manifest weight of the evidence. In her second assignment of error, the appellant maintains that the jury verdict finding that she did not receive an "injury" in the course of and arising out of her employment was against the manifest weight of the evidence. For the following reasons, we do not agree.
It is axiomatic that a judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v. Foley ConstructionCo. (1978), 54 Ohio St.2d 279. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. Myers v. Garson (1993), 66 Ohio St.3d 610.
In her brief, the appellant argues that the jury verdict was not supported by competent, credible evidence. The appellant points to the evidence adduced at trial, including her own testimony as well as the testimony of several medical physicians, to support her position that she had received an injury in the course of and arising out of her employment.
In order to participate in Ohio's workers' compensation fund, an employee must suffer from an "injury" received in the course of, and arising out of, the injured employee's employment. R.C. 4123.01(C). R.C. 4123.01(C) defines "injury" as "any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment."
At trial, the appellant testified that while performing her duties as a security guard, she received an intense electrical shock from a microwave oven located within the plant's main cafeteria. The appellant testified that she received the electrical shock while attempting to prepare a bag of popcorn.[2] According to the appellant's testimony, shortly after receiving the electrical shock, she developed severe headaches, cramps, weakness, and a burning sensation in her legs. The appellant then returned to the front desk and informed Wilson that she had received an electrical shock. Shortly thereafter, the appellant was taken to the hospital emergency room.
At the hospital, the appellant complained of pain and paristhesia in her legs, cramps, and severe headaches. Medical personnel discovered what appeared to be first degree burns on her legs. The appellant testified that the injuries to her legs were the result of the electrical shock. Due to the burns on her legs, the appellant remained in the hospital for two days and was released.
Almost one year later on November 2, 1996, the appellant was given an MRI exam which revealed a small lesion on the thalamus region of her brain. The test also revealed damage to the appellant's spinal cord. Norman Lefkovitz, M.D., a neurologist, testified at his deposition that the electrical shock had caused the appellant's brain and spinal injuries.
The appellant asserts the foregoing evidence affirmatively establishes that she received an injury in the course of and arising out of her employment with Acrux, thus entitling her to participate in Ohio's workers' compensation fund. A complete review of the record, however, reveals competent, credible evidence to support the jury's decision.
At trial, Ruth Wilson testified that immediately after the alleged injury, the appellant returned to the front desk and informed her that she had received an electrical shock. At that time, the appellant did not request medical attention, did not complain of pain, nor did she appear injured. In fact, according to Wilson, the appellant declined medical attention and proceeded to eat from the bag of popcorn for approximately twenty minutes. At that time, the appellant decided to telephone her ex-husband. Immediately thereafter, the appellant requested medical treatment and was taken by emergency medical services to the hospital emergency room.
The admitting physician, Paul Gabriel, M.D., indicated in a written report dated November 13, 1995, that a preliminary examination of the appellant revealed no significant injuries, nor did the appellant have any entrance or exit wounds as a result of the alleged electrical shock. Upon further examination, the only visible injury to the appellant was a series of erythema, or redness, located on the appellant's inner thighs. The appellant testified at trial, however, that she trained horses in her spare time and that she had been riding horses sometime earlier that day.
Although the appellant had no other visible signs of injury, as a precautionary measure, several tests were performed. The tests included a cranial nerve exam, a neurological exam, an electrocardiogram, and a cardiac enzyme test. It is undisputed that the results of these tests were negative.
One day after the appellant's alleged injury, Timothy Pelfrey, M.D., examined the appellant. According to Doctor Pelfrey, he did not observe any signs of electrical shock or injury. Furthermore, on November 15, 1995, Mary Applegate, M.D., examined the appellant and found "no burns or redness" on the appellant's extremities. Doctor Applegate also performed a CT scan, the results of which were negative.
We find the foregoing competent, credible evidence that the appellant did not suffer an injury in the course of and arising out of her employment. Therefore, we find that the jury's decision was not against the manifest weight of the evidence.
Accordingly, the appellant's second assignment of error is overruled.
 Assignment of Error No. I
The trial court erred when it denied plaintiff's motion for a directed verdict and plaintiff's motion for judgment notwithstanding the verdict. The stipulated exhibits and undisputed testimony establish as a matter of law that the plaintiff's injury was received in the course of, and arising out of, her employment.
In her first assignment of error, the appellant maintains that the trial court erred in overruling her motions for a directed verdict and a judgment notwithstanding the verdict. For the following reasons, we do not agree.
The standards for a directed verdict and a judgment notwithstanding the verdict pursuant to Civ.R. 50(A)(4) and (B) are as follows:
 (A)(4) When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
(B) Motion for judgment notwithstanding the verdict.
 Whether or not a motion to direct a verdict has been made or overruled and not later than fourteen days after entry of judgment, a party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion; or if a verdict was not returned such party, within fourteen days after the jury has been discharged, may move for judgment in accordance with his motion. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment. If the judgment is reopened, the court shall either order a new trial or direct the entry of judgment, but no judgment shall be rendered by the court on the ground that the verdict is against the weight of the evidence. If no verdict was returned the court may direct the entry of judgment or may order a new trial.
 In Posin v. A.B. C. Motor Court Hotel (1976), 45 Ohio St.2d 271, the Supreme Court of Ohio held that the same standard applies to a motion for judgment notwithstanding the verdict as it does for a motion for directed verdict. That is, if construing the evidence most strongly in favor of the non-moving parties, reasonable minds could come to different conclusions, then the motion must be denied. In reaching such a conclusion, the court does not weigh the evidence nor the credibility of the witnesses.
The standard of appellate review for the foregoing motions is de novo. See, e.g., Carrera v. Becdir Construction Company (Apr. 20, 2000), Mahoning App. No. 98 CA 223, unreported. Thus, we must construe the evidence most strongly in favor of the nonmoving party and, after doing so, determine whether reasonable minds could only reach one conclusion, that being against the nonmoving party.
In the case herein, the appellant argues the facts are undisputed that reasonable minds could come to but one conclusion upon the evidence submitted at trial. Our own independent review of the record, however, establishes that reasonable minds could come to different conclusions upon the evidence submitted at trial. Thus, the trial court did not err in determining the question presented was one for the jury rather than one to be resolved as a matter of law by the trial court. For all the foregoing reasons, we find that the trial court did not err in overruling the appellant's motions for a directed verdict and for a judgment notwithstanding the verdict.
Accordingly, the appellant's first assignment of error is overruled.
 Assignment of Error No. III
The trial court erred when defendant's counsel was permitted to cross-examine plaintiff's father about the loss of his veterinarian's license.
In her third and final assignment of error, the appellant maintains that the trial court erred in permitting counsel for the appellee to cross-examine Wayne Nichols, the appellant's father, concerning the revocation of his veterinarian's license in 1990. For the following reasons, we do not agree.
At trial, the appellant's father, Wayne Nichols, was called to testify on behalf of his daughter. On direct examination, Nichols testified that shortly after the accident he had observed a subcutaneous hemorrhage on his daughter's legs. Nichols further testified as to the diminished physical and mental capacities of his daughter since the date of the alleged accident.
On cross-examination, Nichols was asked, over objection, whether his veterinarian's license had been revoked in 1990. The trial court overruled the appellant's objection and Nichols was directed by the trial judge to answer the question. Nichols then admitted to the jury that his Ohio veterinarian's license had been revoked. Nichols was also asked if his license had been revoked on the basis that he had "misled the public" into believing that he had employed "acceptable scientific standards of veterinary care." Counsel for the appellant objected to the question, but was subsequently overruled by the trial court. Nichols responded that he did not know.
In her brief, the appellant challenges the trial court's decision to allow the foregoing testimony into evidence. The appellant argues that opposing counsel's questions were based upon inadmissible hearsay and were irrelevant and immaterial. The appellant further maintains that the exchange substantially compromised Nichol's credibility with the jury.
Initially, we note that the admission or exclusion of evidence rests in the trial court's sound discretion. Furthermore, under Evid.R. 611(B), the scope of cross-examination lies within the sound decision of the trial court. State v. Acre (1983), 6 Ohio St.3d 140 . In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
Evid.R. 608(B) provides that on cross-examination a witness may be asked, subject to the trial court's discretion, about specific instances of conduct which are clearly probative of the witness' character for truthfulness. See Evid.R. 608(B); Gianelli, Ohio Evidence Manual, Section 608.05. Unlike, however, Evid.R. 609, extrinsic evidence of such misconduct is inadmissible under Evid.R. 608(B). State v. Leuin (1984),11 Ohio St.3d 172. Nonetheless, the trial court's discretion to admit such evidence is subject to the provisions of Evid.R. 403. Gianelli, Ohio Evidence Manual, Section 608.05(a). Evid.R. 403 requires that the probative value of the evidence be substantially outweighed by unfair prejudice before exclusion is warranted.
In the case herein, Nichols testified on direct examination that he was a veterinarian and that, shortly after the alleged accident, he had observed a subcutaneous hemorrhage on his daughter's legs. We must presume that Nichols' background in veterinary medicine was introduced on direct examination to bolster his testimony regarding the appellant's alleged injuries as well as his character for truthfulness. The supposed revocation of Nichols' veterinarian's license and the reasons therefore are certainly relevant and clearly fall within the ambit of Evid.R. 608(B). We also cannot say that the probative value of Nichols' testimony is substantially outweighed by the danger of unfair prejudice. For all of the foregoing reasons, we find that the appellant's arguments are without merit and, consequently, we cannot say the trial court abused its discretion in allowing questioning of the witness in this regard.
Accordingly, the appellant's third and final assignment of error is not well-taken and is overruled.
Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 WALTERS, P.J., and BRYANT, J., concur.
[1] The appellant sought workers' compensation benefits for numerous injuries such as burns, numbness and tingling in her extremities, sensitivity to light, and severe headaches.
[2] The record establishes that the microwave which allegedly caused the appellant's electrical shock had been repaired the day of the accident due to a twisted plug.